UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TANAJEE MADDOX as Administratrix of the Estate of
Gary Terrance Porter,

                                                  Plaintiff,                  5:19-cv-00678 (BKS/MJK)

v.

SYRACUSE POLICE OFFICER KELSEY
FRANCEMONE, sued herein in her capacity as an
individual,

                                                  Defendant.
_____

**Appearances:**

*For Plaintiff:*
Fred B. Lichtmacher
The Law Office of Fred Lichtmacher P.C.
159 West 25th Street, Room 510
New York, New York 10001

*For Defendant:*
John G. Powers
Mary L. D'Agostino
Ryan M. Poplawski
Hancock Estabrook, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202

Susan Katzoff,
Corporation Counsel for the City of Syracuse
Todd M. Long
City of Syracuse Law Department
233 E. Washington Street
300 City Hall
Syracuse, New York 13202

1

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Tanajee Maddox, as Administratrix of the Estate of Gary Terrance Porter, brings this action under 42 U.S.C. § 1983 against Defendant Syracuse Police Officer Kelsey Francemone asserting a claim for excessive force in violation of the Fourth Amendment. (Dkt. No. 1). Trial is scheduled for May 12, 2025. Presently before the Court is Defendant's motion in limine #11 to preclude the recovery of all economic damages, (Dkt. No. 276), asserting that Plaintiff waived the recovery of economic damages other than funeral and medical expenses in the parties' economic damages stipulation, (Dkt. Nos. 84, 340). Defendant seeks to preclude the recovery of damages for loss of parental guidance.[1] The court heard oral argument at the motions hearing on November 8, 2024. (Dkt. No. 387). The motion is fully briefed. (*See* Dkt. Nos. 276-7, 303, 337, 340, 432, 436-7, 444-5). For the reasons that follow, that motion is granted.

**II.    FACTUAL BACKGROUND**

    **A.    Plaintiff's Rule 26 Disclosure and Subsequent Discovery Dispute Regarding Loss of Parental Guidance**

In Plaintiff's Rule 26 disclosure[2], dated September 11, 2019, Plaintiff stated that she was seeking damages for "the opportunity to give guidance to [Mr. Porter's] family[.]" (Dkt. No.

---

[1] Defendant's original motion, argued that the Court "should preclude any economic damages attributed to medical expenses because those damages were not disclosed pursuant to Rule 26(a)(1)(A)(iii)," and that "Plaintiff cannot recover funeral expenses because there is no evidence such expenses were paid by the estate." (Dkt. No. 276, at 5, 7).There was never a dispute about medical expenses and the parties appear to have reached a resolution on the issue of funeral expenses. (*See* Dkt. No. 387, at 105-08).

[2] "Under Rule 26, a party must 'provide ... a computation of each category of damages claimed,' 'make available for inspection and copying ... the documents or other evidentiary material ... on which each computation [was] based,'

2

276-2, at 6). Later, during discovery, Defendant objected to Plaintiff's failure to respond to an interrogatory request seeking the identity of "distributees who were dependent upon" Mr. Porter. (Dkt. No. 53-5, at 5). Defendant also disputed the sufficiency of Plaintiff's discovery responses regarding the basis and calculation of the alleged loss of parental guidance. (See Dkt. No. 53-5, at 7). Defendant's Interrogatory 17 asked Plaintiff to describe "the basis and calculation of the damages to which Plaintiff alleges [she] is entitled[.]" (*See id.*). Plaintiff answered, "Pain and suffering, including but not limited to "(d) [l]oss of pecuniary support to [Mr. Porter's] estate; (however plaintiff has waived prospective damages)" and "(e) [l]oss of guidance to his heirs[.]" (*Id.*). In a letter to Plaintiff's counsel dated June 8, 2021, Defendant noted "if Plaintiff intends to waive prospective economic damages, please amend your response to withdraw subparagraphs (d) and (e)." (*Id.*).

In a subsequent letter brief to Magistrate Judge Baxter, summarizing the dispute regarding Interrogatory 17, Defense counsel informed the court that "Counsel has represented to the undersigned that he intends to limit economic damages to only funeral and burial expenses and hospital and/or medical expenses. Yet, his response to this interrogatory suggests that he will seek elements of damages outside of that. If he still intends to waive such categories of damages, this interrogatory response must be supplemented. In the alternative, Defendants will accept a stipulation regarding the waiver of economic damages after the funeral and burial expenses." (Dkt. No. 56, at 3).

---

and 'supplement or correct' those disclosures on a timely basis." *Funk v. Belneftekhim*, No. 14-cv-376, 2020 WL 7642868, at *3 (E.D.N.Y. Dec. 23, 2020) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii), (e).). "This rule also requires a party to disclose its theory of damages." *Id.* (citing *Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*, No. 04-cv-3854, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005)).

B.     October 29, 2021 Telephone Conference

On October 29, 2021, Magistrate Judge Baxter heard from the parties about their discovery disputes and a stipulation relating to damages. (*See* Dkt. No. 85). The court addressed "the efforts of the parties to stipulate with respect to what plaintiff is or isn't claiming with respect to economic damages[,]" and noted that "apparently [they] had some trouble with the wording of that, and if that [couldn't] be agreed upon, Ms. D'Agostino[was] also looking for some supplemental information with respect to the economic damages that [Plaintiff]may be pursuing." (*Id.* at 10). Counsel for Plaintiff (Mr. Lichtmacher) stated, "We have signed and provided to adversary counsel that we waived all prospective harm." (*Id.* at 10). Mr. Lichtmacher went on to explain, "So we agree, no prospective harms. I said that—again, on the damages, I said that in front of you, I signed an affidavit—excuse me, a stipulation, and sent it to the other side, so I don't know where the problem is. [. . .] So I'm waiving all prospective harms, economic harms, we've said that. We've said it over and over again. [T]hen they start making discovery requests regarding prospective damages, economic damages. That's ridiculous. We've already said we waived them." (*Id.* at 11).

Counsel for Plaintiff (Mr. Halperin) explained that "in the Maddox matter, plaintiff is willing to waive future lost income, essentially economic damages relating to the wrongful death claim. [. . .] And the interrogatories and document requests that are referenced by Ms. D'Agostino relate to prospective economic damages that we're already waiving." (*Id.* at 13-14). Mr. Halperin indicated that Plaintiff was not pursuing lost income claims, and Mr. Lichtmacher further remarked: "We've waived our claim for future wages, loss of earning capacity, the solely—final support, if any, that would've contributed to his children, blah, blah, blah, the loss

4

of economic gifts or methods that Mr. Porter would expect to receive from him had he survived and any other out-of-pocket loss other than those identified in paragraph one. I don't see where there's a problem." (*Id.* at 15, 18). The court remarked, "I don't see the point of forcing them to provide discovery for damages that they're not seeking." (*Id.* at 19). "[I]t doesn't seem to make any sense to require the plaintiffs to supply responses to [ ] Interrogatory [ ] 17, which asks for information with respect to prospective and economic damages that the plaintiffs are not going to be pursuing." (*Id.* at 20).

    **C.    November 12, 2021 Damages Stipulation**

Following the October 29, 2021 telephone conference, the parties stipulated as follows:

1. Plaintiff's claim for economic damages shall be limited to only the following items:
   a. funeral and burial expenses; and
   b. hospital and/or medical bills, which were paid by the Estate of Gary Terrance Porter and which were not covered by any type of insurance and not subject to reimbursement by way of subrogation.
2. Plaintiff hereby waives any claims for:
   a. Loss of future wages;
   b. Loss of earning capacity;
   c. Loss of household services;
   d. The financial support, if any, that Mr. Porter would have contributed to his children during either the life expectancy that he had before death or the life expectancy of his children, whichever is shorter;

      e.    The loss of economic gifts or benefits that Mr. Porter's children would have expected to receive from him; and

      f.    Any other out-of-pocket loss other than that identified in Paragraph 1.

(Dkt. No. 84).

The parties reiterated the terms of the damages stipulation in their joint pretrial stipulations. (Dkt. No. 269, at 4-5).

### D. Defendant's Motion in Limine to Preclude the Recovery of All Economic Damages

Defendant filed Motion in Limine #11, seeking to preclude the recovery of all economic damages and specifically citing to medical expenses and funeral expenses. (*See* Dkt. No. 276-7). Plaintiff first raised the issue regarding whether economic damages included loss of parental guidance in a supplemental response to Defendant's motion in limine. (*See* Dkt. No. 337). Plaintiff asserted that during conversations with Defense counsel, Plaintiff "learned that the Defendant interprets economic damages to include loss of parental guidance which counsel claims is an economic damage waived by the Plaintiff." (*Id.* at 1).

At the November 8, 2024 hearing on the parties' motions in limine, the Court asked whether there was "discussion about what counsel meant when [he] entered into this stipulation about purely economic harms[,]" with respect to loss of parental guidance, and if there was "anything on the record[.]" (Dkt. No. 387, at 112). Mr. Lichtmacher reported, "Yes, we said we're not going into anything—not on the record. We said we're not going into anything about his income. That's what was discussed. And that's the way we phrased it, if you look at the stipulations, purely economic. This is—and as you said, these are not considered economic harms. There could be a component of economic harms, we waive those. The part that we're

6

going for is parental care and guidance. And in terms of that, it's more analogous to the emotional harm." Mr. Lichtmacher argued that the stipulation does not say that he waived the right to recover for loss of parental guidance, and that the only issue is "whether or not all loss of guidance has to be purely economic, and the case law that you cited and that I cited in my supplemental response clearly says it is not even, under the EPTL [New York Estate Powers and Trusts Law]. And further, we're not only under the EPTL, we're under Judge Marrero's ruling about 1988 and supplemental damages allowed in a 1983 action." (*Id.* at 114-115).

Counsel for Defendant, Ms. D'Agostino, disagreed, citing to her memorandum of law "outlin[ing] how loss of parental guidance is an economic component of damages." (*Id.* at 113 (citing Dkt. No. 340)). Ms. D'Agostino further argued that after the stipulation was executed defense counsel couldn't explore a request for loss of parental guidance during discovery, because "Attorney Lichtmacher would interject and interfere and prevent that line of questioning so that we couldn't get into it because economic damages had been waived and that was his position." (*Id.* 113).[3]

The Court reserved on this motion. (*Id.* at 115).

### III.    DISCUSSION

The parties dispute whether loss of parental guidance is a claim for economic damages. Plaintiff argues that courts "treat guidance loss as a significant, non-economic harm, not just about losing financial support." (Dkt. No. 337, at 1). Defendant disagrees, asserting that "Plaintiff's position regarding loss of parental guidance being non-pecuniary (or non-economic)

---

[3] The parties dispute whether the loss of parental guidance was explored in depositions or objected to by Plaintiff's counsel. (*See id.* at 113-14). However, neither party cited to any record support.

7

is simply contrary to law." (Dkt. No. 340, at 1 (citing Turano, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 5-4.3; N.Y. Pattern Jury Instr.--Civil 2:320)). Defendant argues that the Court should not permit Plaintiff "to disavow on the clear language of the So-Ordered stipulation (particularly when it shaped Defendant's discovery)." (*Id.* at 3).

Section 1983 itself "contains no provision defining specific elements of recoverable damages." *Banks ex rel. Banks v. Yokemick*, 177 F. Supp. 2d 239, 247. Under 42 U.S.C. § 1988, "when federal law does not offer suitable remedies, courts shall apply the common law, as modified and changed by the constitution and statutes of the State wherein the court sits unless such state law is inconsistent with federal law." *Collado v. City of New York*, 396 F. Supp. 3d 265, 278 (S.D.N.Y. 2019) (internal quotations and citations omitted).

In New York, "[d]amages in a wrongful death action are limited to 'fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought[.]'" *Milczarski v. Walaszek*, 969 N.Y.S.2d 685, 686 (N.Y. App. Div. 2013) (quoting (EPTL 5–4.3[a]). The New York wrongful death statute "does not permit recovery for grief or for loss of society, affection and conjugal fellowship—all elements of the generic phrase 'loss of consortium.'" *McKee v. Colt Elecs. Co.*, 849 F.2d 46, 50 (2d Cir. 1988) (quoting *Liff v. Schildkrout,* 49 N.Y.2d 622, 633 (N.Y. 1980) (internal quotations omitted)). However, while "children may not recover for loss of a parent's companionship, they may recover for the *pecuniary* loss suffered as a result of the lost nurture, care, and guidance they would have received if the parent had lived." *Id.* (emphasis added). "The key requirement for recovery under New York's statutory scheme, therefore, is proof of pecuniary loss." *Id*. "'Pecuniary loss' is defined as 'the economic value of the decedent to each distributee at the time

8

decedent died[.]'" *Milczarski*, 969 N.Y.S.2d at 686 (quoting *Huthmacher v. Dunlop Tire Corp.*, 765 N.Y.S.2d 111, 113 (N.Y. App. Div. 2003). Pecuniary loss "includes loss of income and financial support, loss of household services, loss of parental guidance, as well as funeral expenses and medical expenses incidental to death[.]" *Id.* (citation omitted). *See also DeLong v. Erie Cnty.*, 455 N.Y.S.2d 887, 893 (N.Y. App. Div. 1982), *aff'd sub nom. De Long v. Erie Cnty.*, 60 N.Y.2d 296 (N.Y. 1983) ("In determining what is just compensation for the pecuniary injury sustained by a decedent's beneficiaries, the courts have considered myriad factors, including the decedent's age, relationship to the person seeking recovery, earning capacity and life expectancy.").

Second Circuit and New York state case law both describe loss of parental guidance as a pecuniary harm. *See Kohl v. Young*, No. 17-cv-692, 2018 WL 3104447, at *2, 2018 U.S. Dist. LEXIS 104639, at *3 (N.D.N.Y. June 22, 2018) ("Pecuniary losses include 'the economic value of the decedent to each distributee at the time decedent died and include[ ] loss of income and financial support, loss of household services, loss of parental guidance, as well as funeral expenses and medical expenses incidental to death.'"); *Collado*, 396 F. Supp. 3d at 280 (S.D.N.Y. 2019) ("Calculation of pecuniary losses is therefore left to the jury, which considers factors including "age, character, earning capacity, health, intelligence, and life expectancy of the decedent, as well as the degree of dependency of the distributees upon the decedent and the probable benefits they would have received but for the untimely death."); *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 52 (2d Cir. 1984) ("Recovery for wrongful death under New York law includes compensation not only for the loss of 'direct financial benefits' but also for the loss of the nurture, care and guidance decedents would provide their children had death

not intervened. Assessing the pecuniary value of such loss is of course problematic[.]"); *McKee*, 849 F.2d at 52 (2d Cir. 1988) (noting, under New York state law and with respect to loss of parental guidance, that "because direct evidence of pecuniary injury is often unavailable, 'calculation of pecuniary loss is a matter resting squarely within the province of the jury'" (quoting *Parilis v. Feinstein,* 49 N.Y.2d 984, 985 (N.Y. 1980))).[4]

In the context of loss of parental guidance, "[t]he term 'pecuniary injuries' has been broadly construed to include recovery for the 'economically recognized and calculable losses of the household management services of [the deceased]' and 'the premature loss of the educational training, instruction and guidance [that the children] would have received from the now-deceased parent.'" *Mono v. Peter Pan Bus Lines, Inc.*, 13 F. Supp. 2d 471, 477 (S.D.N.Y. 1998) (quoting *Gonzalez v. New York City Housing Auth.*, 555 N.Y.S.2d 107, 108–09 (N.Y. App. Div. 1990)). Finally, the Second Circuit has noted that the "damages for pecuniary injury due to loss of care, guidance, training and education" is a future, prospective loss. *McKee*, 849 F.2d at 52 ("New York courts have long recognized that proof of future losses is, by necessity, 'indefinite, prospective, and contingent.'" (quoting *Houghkirk v. Delaware Hudson Canal Co.,* 92 N.Y. 219, 225 (1883))).

Here, Plaintiff specifically argued, in the telephone conference just prior to the submission of the parties' damages stipulation, that Plaintiff waived all "prospective" and

---

[4] Courts appear to read "pecuniary" and "economic" (as well as "non-pecuniary" and "noneconomic") as interchangeable or equivalent. *See, e.g., United States v. Rybicki*, 287 F.3d 257, 259 (2d Cir. 2002), *on reh'g in banc*, 354 F.3d 124 (2d Cir. 2003) (referring to "economic or pecuniary harm"); *Chopra v. Gen. Elec. Co.*, 527 F. Supp. 2d 230, 247 (D. Conn. 2007) ("Defendant asserts that the jury's award of non-economic damages cannot be sustained because it is unsupported by evidence of "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, [or] other nonpecuniary losses." (emphasis added)); 25 C.J.S. Damages § 42 ("One injured by the wrong of another is generally entitled to compensation for all pecuniary losses—i.e., economic damages— sustained.").

10

"economic" harms. (*See* Dkt. No. 85, at 11 ("So I'm waiving all prospective harms, economic harms, we've said that. We've said it over and over again.")). Case law plainly identifies loss of parental guidance as pecuniary, or economic, in nature. *See Milczarski*, 969 N.Y.S.2d at 686; *Mono*, 13 F. Supp. 2d at 477. Further, loss of parental guidance is a "future" or "prospective" harm, *see McKee*, 849 F.2d at 52. Finally, Magistrate Judge Baxter specifically referenced the disputed interrogatory, Interrogatory 17—seeking the basis and calculation of loss of guidance—when he determined that it didn't "seem to make any sense" to require Plaintiffs to respond to questions about "prospective and economic damages that the plaintiffs are not going to be pursuing." (*Id.* at 20).

In support of Plaintiff's argument that loss of parental guidance is a non-economic loss, Plaintiff cited several cases—but none of these cases identify loss of parental guidance as a "non-economic" harm. *See Gonzalez v. New York City Housing Auth.*, 77 N.Y.2d 663, 667-68 (N.Y. 1991) ("New York since its first wrongful death statute has steadfastly restricted recovery to 'pecuniary injuries[.]'" (citation omitted)); *Shu-Tao Lin*, 742 F.2d at 52 ("Assessing the pecuniary value of such loss is of course problematic[.]."); *McKee*, 849 F.2d at 52 (noting that the recovering party need not provide "direct evidence of pecuniary injury," and that "calculation of pecuniary loss is a matter resting squarely within the province of the jury." (quoting *Parilis,* 49 N.Y.2d at, 985)); *Richardson v. Lutheran Hospital*, 417 N.Y.S.2d 526, 527 (N.Y. App. Div. 1979) ("[P]ecuniary loss includes consideration of the chores and duties performed by decedent for his family as well as the loss of care, love and guidance that he would have provided for his children[.]").

Plaintiff is correct that "section 1988 does not require deference to a survival statute that would bar or limit the remedies available under section 1983 for unconstitutional conduct that cause death." *See Collado*, 396 F. Supp. 3d at 278 (S.D.N.Y. 2019) (quoting *McFadden v. Sanchez*, 710 F.2d 907, 911 (2d Cir. 1983)). Indeed, following the *Collado* decision, this Court will permit Plaintiff to recover damages for loss of enjoyment of life—even though such damages are not permitted under the New York survival and wrongful death statutes. *See id.* at 277. But unlike loss of enjoyment of life, loss of parental guidance *is* recoverable under the New York wrongful death statute—as a *pecuniary*, or economic, loss. *See McKee*, 849 F.2d at 50; *Milczarski*, 969 N.Y.S.2d at 686. The New York survival statute does not limit the remedies available to Plaintiff here; Plaintiff's ability to recover for loss of parental guidance is limited by stipulation.

Thus, the Court finds that loss of parental guidance is an economic loss. Defendant's motion in limine to preclude evidence of loss of parental guidance is granted, because Plaintiff is bound by her stipulation agreeing to limit her claim for economic damages to funeral and medical expenses.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion in limine #11, with respect to precluding Plaintiff from recovering damages for loss of parental guidance, (Dkt. No. 276), is **GRANTED**.

**IT IS SO ORDERED.**

Dated: April 9, 2025
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge