At a term of the Supreme Court of the State of New York, held in and for the County of Onondaga at the Courthouse, in Syracuse, New York, on the 19th day of March, 2025.

**PRESENT:**

**HON. JEAN MARIE WESTLAKE**
**JUSTICE OF THE SUPREME COURT**

**SUPREME COURT**
**STATE OF NEW YORK          COUNTY OF ONONDAGA**

---

**IN THE MATTER OF THE GRAND JURY MINUTES**
**CONCERNING POLICE OFFICER KELSEY**           Index No. 001574/2025
**FRANCEMONE IN CONNECTION WITH THE**          DR 16-334526
**OFFICER-INVOLVED SHOOTING ON JUNE 19, 2016.**

---

**APPEARANCES:**

LAW OFFICE OF FRED LICHTMACHER, P.C.
FRED LICHTMACHER, ESQ.
*Attorneys for Estate of Gary Terrance Porter*
159 West 25th Street, Room 510
New York, New York 10001

HANCOCK ESTABROOK, LLP
MARY L. D'AGOSTINO, ESQ.
*Attorneys for Police Officer Kelsey Francemone*
1800 AXA Tower I – 100 Madison Street
Syracuse, New York 13202

ONONDAGA COUNTY DISTRICT ATTORNEY OFFICE
BRADLEY W. OASTLER, ESQ.
*Attorneys for Onondaga County District Attorney*
Criminal Courthouse, 4th Floor
505 South State Street
Syracuse, New York 13202

    Currently before the Court is an Order to Show Cause brought by the Estate of Gary Terrance Porter seeking an Order: 1) granted the unsealing, pursuant to CPL§ 190.25(4)(a) of certain, limited portions of the Onondaga County Grand Jury minutes regarding the investigation into the shooting death of Gary Terreance Porter that occurred the evening of June 19, 2016, near

Skiddy Park, in Syracuse, New York; or 2) in the alternative, an Order permitting representative Tanajee Maddox, Administratrix of the Estate of Gary Terrance Porter, permission to inspect and copy certain, limited portion of the Onondaga County Grand Jury minutes pursuant to CPL§190.25(4)(a), more specifically the Grand Jury testimony of Police Office Kelsey Francemone who shot Gary Terrance Porter killing him, and all exhibits presented in conjunction with her testimony. The Order was served upon the Onondaga County District Attorney's Office, Hancock & Estabrook, LLP as attorneys for Police Office Kelsey Francemone[1] and Syracuse Corporation Counsel. A prior application for the same relief was made to the Onondaga County Court in January 2017 before the Hon. Thomas J. Miller, which was denied.

In support of the motion, the Estate Administratrix submitted the Combined Affirmation and Memorandum of Fred Lichtmacher, Esq., Law Office of Fred Lichtmacher, P.C., dated November 26, 2024, with attached exhibits. In opposition to the motion, Police Officer Kelsey Francemone submitted the Affirmation of Mary L. D'Agostino, Esq., dated March 10, 2025, with attached exhibits.[2] Also in opposition to the motion, the Onondaga County District Attorney's Office submitted the Affirmation of Bradley W. Oastler, Esq., dated March 10, 2025.

The matter was returnable March 19, 2025. The Law Office of Fred Lichtmacher, P.C., Fred Lichtmacher, Esq., of counsel, appeared on behalf of the Estate of Gary Terrance Porter. Hancock Estabrook, LLP, Mary L. D'Agostino, Esq. and Anna Melo, Esq., of counsel,, appeared on behalf of Police Officer Kelsey Francemone and Bradely W. Oastler, Esq., appeared on behalf

---

[1] Police Office Kelsey Francemone is represented by Hancock Estabrook, LLP in the matter of Maddox v. Francemone, Civil Action No.: 5:19-CV-0678 (BKS/MJK), which is presently pending in U.S. District Court, Northern District of New York.

[2] The Memorandum of Law in Opposition to Plaintiff's Request to Unseal Officer Francemone's Grand Jury Minutes was submitted by Hancock Estabrook, LLP, John G. Powers, Esq. and Mary L. D'Agostino, Esq. and Corporation Counsel for the City of Syracuse, Susan Katzoff, Esq. and Todd M. Long, Esq.

of the Onondaga County District Attorney's Office. After oral arguments, the Court reserved decision.

### I.  THE INCIDENT

On June 19, 2016, Police Office Kelsey Francemone, an officer with the Syracuse Police Department, was on duty, working in the territory known at the "Near West Side". According to Officer Francemone, during a police call, she rounded the corner to a courtyard, and saw muzzle flash coming from at least three (3) handguns near a car that was parked a distance from her. There were allegedly individuals actively shooting handguns from the area of the car. One from the position of the driver's door, one from the driver's side rear door and one from the passenger side of the car. At the same time, she states she could see muzzle flash coming from another male in a white T-shirt who was firing a handgun near the rear entranceway at Otisco Street. She claims it wasn't clear to her in which direction the male was shooting because her attention was focused on the male situated near the rear driver's side door of the black sedan.

As she continued to move forward, Officer Francemone noticed a large tree in front of her and maneuvered herself to take cover behind it. She then claims she yelled in the direction of the car, "Police", "Drop Your Gun!" and "Show me Your Hands!". At that point, she states there was a male with a yellow shirt who looked at her and then turned and continued to fire his handgun. Believing him to be a threat, Officer Francemone discharged several rounds of ammunition from her handgun in the direction of that male. State states he seemed to take notice of the fact that she was shooting at him because he turned towards her like he wanted to run but tripped up and fell with the gun in his hand. Officer Francemone's gun then malfunctioned, so she racked the slide and loaded a new magazine. The male in the yellow shirt then pushed

himself up and ran towards the front of one of the public housing buildings where she lost sight of him.

Officer Francemone states she continued to hear gunfire coming from her right. When she turned, she said she saw the same male in the white T-shirt from before standing there with a handgun in his hand, approximately three or four feet away from her. In response, she pointed her gun at him and told him to drop his weapon, but he allegedly turned and ran westbound through one of the cuts in the courtyard. Officer Francemone claims she yelled "Stop!", "Drop Your Gun!" and "Show Me Your Hands!". However, the male continued to run, and she pursued him on foot. As she continued to yell commands at him, the male allegedly pivoted and turned towards her with a gun in his hands. Officer Francemone claims she hesitated because there were people running all around them. She continued to pursue the male in the white T-shirt who she alleges pivoted towards her with a gun in his hands a second and third time. Officer Francemone then discharged several rounds from her handgun in his direction. The male continued to run around a building. When she rounded the corner herself, she saw a bunch of people standing around a male that was lying face down on the ground. Presumably the male on the ground was Terrence Maddox who died from one of Officer Francemone's gunshots. The surrounding crowd physically attacked Officer Francemone upon seeing her approach the body on the ground, forcing her to take cover until other officers arrived.

A grand jury was convened following the shooting. Officer Francemone chose to testify on her own behalf, although she had the absolute right not to do so. The Grand Jury returned a no true bill and no charges were filed against her.

II.     VENUE

Counsel for Officer Francemone raised the issue of whether this matter should be referred

to the Onondaga County Court for further handling. It is well settled law that when seeking the unsealing of state grand jury materials, a "party should initially apply to the relevant *state court*, a practice which serves both comity and practicality" *Dave v. Cty. of Suffolk*, 2017 U.S.Dist. LEXIS 85040 (E.D.N.Y. June 2, 2017) citing *Douglas Oil Co.*, 441 U.S. at 224-25 [emphasis added]. While the Estate could have made application to the County Court as it previously did, there is nothing to preclude the application from being made in Supreme Court, therefore, venue in this Court is proper.

### III.  STANDARD

As set forth in CPL 190.25, "Grand jury proceedings are secret, and no grand juror, or other person specified in subdivision three of this section or section 215.70 of the penal law may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding." See, CPL §190.25.

There are, however, exceptions by which disclosure is permitted. First, CPL §190.25 does not prevent a witness from disclosing his or her own testimony. See, CPL §190.25. Second, disclosure is permitted, at the discretion of the trial court when, "[after] a balancing of a public interest in disclosure against the one favoring secrecy, the former outweighs the later***But since disclosure is 'the exception rather than the rule', one seeking disclosure first must demonstrate a compelling and particularized need for access***However, just any demonstration will not suffice. For it and the countervailing policy ground it reflects must be strong enough to overcome the presumption of confidentiality. In short, without the initial showing of a compelling and particularized need, the question of discretion need not be reached,

for then there simply would be no policies to balance." *Ruggiero v. Fahey*, 103 A.D.2d 65 (2nd Dep't 1984) citing *Matter of District Attorney of Suffolk County*, 58 NY2d 436, 444 (1983).

In determining if the public interest in disclosure outweighs the need to maintain secrecy of the grand jury process, certain factors must be considered. *People v. Di Napoli*, 7 N.Y. 2d 229 (1970). To be sure, those factors include: 1) prevention of flight by a defendant who is about to be indicted; 2) protection of the grand jurors from interference from those under investigation; 3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; 4) protection of an innocent accused form unfounded accusations if in fact no indictment is returned; and 5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely. *Id.* at 235.

### IV. ANALYSIS

In this case, the Estate commenced a civil action in Federal Court (Maddox v. Francemone, Civil Action No.: 5:19-CV-0678 (BKS/MJK) against Officer Francemone. It is this Court's understanding discovery is complete, and trial is scheduled. During discovery, Officer Francemone was deposed at length on September 14, 2021 as well as gave testimony related to the associated criminal matters on January 20, 2017. Additionally, she gave written statements on June 20, 2016 and June 22, 2016, which the Estate also obtained. The Estate alleges Officer Francemone's sworn statements are materially inconsistent with "numerous other witnesses". The Estate seeks the unsealing of certain portions of the grand jury minutes as: 1) "knowing what she may or may not have said to the grand jury makes it crucial to see her earliest testimony for Gary Porter's estate to have a fair trial"; and 2) "the grand jury minutes may contain testimony that is vital for understanding the full scope of these inconsistencies, allowing

us to more effectively cross-examine Officer Francemone and more effectively challenge her credibility". In essence, Petitioner seeks to unseal certain portions of the grand jury testimony for potential use in impeaching Officer Francemone and trial preparation.

The unsealing of grand jury minutes for use during cross-examination and, therefore, for use in challenging a witness's credibility is not a compelling and particularized need. *People v. Di Napoli*, 27 NY2d 229, 237 (1970). To be sure, while grand jury testimony may be used to impeach witnesses and refresh their recollections, more is needed to overcome the strong presumption of confidentiality at this stage of the litigation.

The Appellate Division, Second Department reached a similar conclusion in *Melendez v. New York*, 109 A.D.2d 13 (2nd Dep't 1985). Similar to this case, there was a police shooting that resulted in a civil lawsuit. The police officer testified before the grand jury under a waiver of immunity. Following testimony, the grand jury declined to take any action against the officer. Plaintiffs in the civil action moved to compel the District Attorney to produce, *inter alia*, the grand jury testimony of the officer, and his tape-recorded statement. The Court in upholding the lower court's determination that the compelling and particularized standard had not been met stated the "conclusory claim by counsel that the Grand Jury minutes are needed to prepare for trial or that they would be useful in impeaching witnesses on cross-examination is insufficient to overcome the presumption of confidentiality." *Melendez v. New York*, 109 A.D.2d 13, 17. To be sure, "[t]he fact the information may generally be useful for those purposes is 'unpersuasive for the reason that such claims can be made in any case involving a civil action and prior Grand Jury testimony'." *Id.* at 20.

Moreover, there are and were several discovery devices available to the Estate that would allow them to obtain information useful in the preparation of trial as well as use for impeachment

of Officer Francemone. Indeed, the Estate has obtained two (2) statements made by Officer Francemone the same month of the incident as well as two separate testimonies taken under oath. The Court notes, "secrecy has been an integral feature of Grand Jury proceedings since well before the founding of our Nation" and finds the need for Officer Francemone's grand jury testimony or other information would be nothing more than additional discovery, which is not compelling enough to breach the time-honored secrecy principals of a grand jury proceeding which is a cornerstone of our criminal proceedings (*People v. Seymour*, 255 A.D.2d 866 (4th Dept., 1998 citing *Matter of District Attorney of Suffolk County*, 58 NY2d 436 (1983).

However, notwithstanding, a prior application was made for release of grand jury testimony for two witnesses and granted by another Court. No information regarding when the application was made or the basis for the other Court's granting of the application was submitted. When questioned about it during oral arguments, counsel for Officer Francemone stated:

> "And the two individuals you referenced, the two witnesses that testified on behalf of Officer Francemone on the grand jury, we made the specific – the compelling and particularized showing that we needed to get their testimony because we believe that they were – that they were going to refuse to cooperate, and that's exactly what happened in Federal Court."

Further,

> "They have both given different testimony that either they weren't there or – it's well beyond the scope of this. But suffice it to say is we made this the appropriate showing."

This Court questions whether the releasing of grand jury testimony of two witnesses who testified in favor of Officer Francemone's would result in undue prejudice against the Estate at trial. However, that is not before this Court and is better left to the trial court.

As no compelling and particularized need has been demonstrated here, there is no need to determine if the public interest in disclosure outweighs the favoring for secrecy.

## V.    CONCLUSION

For the foregoing reasons, the Estate's application for the relief requested is **DENIED** in its entirety and the petition is **DISMISSED**.

Dated: May 5, 2025

ENTER,

_____
HON. JEAN MARIE WESTLAKE, J.S.C.